Good morning, Your Honors. My name is Creighton Sebra with Clark Hill, and I represent the appellants Jeffrey and Kathleen Ludlow. And in this matter, the court should reverse the summary judgment from the district court because the loss of use damages were a natural and foreseeable consequence of the water damage that was caused to the appellant's home because these loss of use damages were not only both foreseeable, but they were not a special circumstance. In addition, the court should reverse the district court's finding regarding the duty of care by Lowe's because the tort duties went beyond the contractual duties to deliver the refrigerator to hook up the water line, which is evidenced by the representations that were made by Lowe's to above those prior to and at the time of forming the contract, as well as the Lowe's delivery manual sets forth its own independent duties that they would adhere to, which also transcend the contract. Well, counsel, assuming there were to be consequential damages, I'm troubled by the problem of competent evidence to support your claim. What specific admissible competent evidence is there in this record? Are you referring to the loss of use, Your Honor? Yeah. Well, or any of the other claims that you're making on the theory of consequential damages. Yes, Your Honor. The loss of use is supported by, first, obviously, the lower court that strikes some of the experts. Mr. Ferguson would be an expert that would talk about the diminution of value. That testimony was not allowed. Secondly . . .  Yes, Your Honor. That's part of the appeal. All right. They're also . . . That's more than loss of use. In addition to loss of use, there's a claim for a purported reduction in value of the property. There's two components . . . But all of that is supported by Mr. Ferguson, and Mr. Ferguson's been struck, so I think Judge O'Scanlan's question really gets at it. What competent proof was there for any of these claims? I was . . . Go ahead, Your Honor. I'm just saying, if we think the district court did an error in striking Mr. Ferguson, I guess Mr. Boone's testimony, was there enough other evidence in the record? Yes, Your Honor. That's what I was getting to, is that Mr. Boone's testimony was admitted in part and struck in part, and then there was three paragraphs that were struck that did deal with loss of use and how long that would take to do. There's also evidence that was admitted by . . . Oh, if that struck . . . So my question was, if we agree with the district court in its determination, in its evidentiary rulings, is there adequate evidence to support your claim? Yes, Your Honor. There is evidence, and that comes from Mr. Durnian, who was the defendant's own adjuster. He made an independent evaluation that there would be loss of use. He set that as an approximate 30 days. He didn't testify as an expert, but he did testify in his deposition that he felt that there would be a period of time. If he's not an expert, what's his statement worth? Well, he's obviously there. He evaluated the property. Well, I'm here. That doesn't mean I'm in a position to offer competent testimony. Telling me that he's there really doesn't tell me why it was the court should pay any attention to what he had to say on the subject. But he does testify that there would be a period of time that during the repairs that there would be a loss of use. He goes in . . . But that doesn't answer the question why the court should care what he says. You tell me what he says, what makes him competent to say that? You've just told us he wasn't qualified as an expert, so why does anybody pay attention to what he has to say? Well, I think in this case, whether there's loss of use is a reasonable, foreseeable outcome of when you have damage to the property. You're shifting to a different question. We are trying to focus . . . assume for the moment that we agree with you that this loss of use claim was reasonably foreseeable. I look at the record. I don't see where it was proven up. And so the question to you is, where was it proven up? What's the evidence? And so far, you've told me about an expert who's not an expert. Still don't have any evidence that proves up that claim with the reasonable certainty required by Hawaiian law. The Lubbos testified that they would not be able to use the property themselves. Mr. Durnian's testimony . . . For how long? They . . . well, based on Mr. Boone's testimony, that he estimated that his repairs would take approximately about 50 days. And so that testimony is there. Mr. Boone went through how long he would take to do those repairs. And so when you combine Mr. Durnian's testimony saying, look, the property's not going to be livable. You don't have the kitchen. You don't have the first floor. It's not reasonable.  The testimony on the record is that this is their primary residence. I'm sure it varies from year to year. But they do consider Maui to be their residence. In fact, this morning, my client was . . . Is there evidence as to how much time? Judge Clifton's question was how much time. Is there evidence in the record as to how much time they spend there? I don't think it's clear as to by year to year. But they do hold that up to be their primary residence. And I think . . . I have a primary residence also located in Hawaii, as it happens. But that doesn't mean I'm there 100 percent of the time. And so if work gets scheduled, it often gets scheduled when I'm not there. And so I haven't heard any answer to the question that tells me why the time for repair can't be taken care of when your client's otherwise not going to be there. And then telling me that it's their primary residence, I mean, that may be the evidence that's in the record. But that doesn't answer the question that I'm trying to get an answer to. And it is . . . the record does show that they're not on Maui 100 percent of the time. So that is true. But Hawaii law does not require the person to be there 100 percent of the time. And that's not the same . . . No, but it doesn't tell me why work that might need them to vacate the property for a fairly limited period can't be scheduled when they're not going to be there. Well, they are not off island for months at a time. Maybe a week or two there. Mr. Ludlow did testify to that, Your Honor. His testimony. Yes. And also, if he's . . . if they're not on island, they have to turn that property over to someone else. I've got to tell you, I come into this claim having seen it first, really, as a rental claim, which gets knocked out because Maui law doesn't permit rentals. And so it seems like the theory has somehow shifted. But the proof for the shifting theory really is kind of tenuous. And so these questions are sincere. But I have trouble seeing how the claim, even if legally viable, has been proven. Well, obviously, the district court gutted the ability for us to bring in evidence and to approve the loss of use. And so at that point in time . . . So if we need to get to those witnesses, maybe you better tell us why those witnesses provided testimony that should be admitted. Mr. Ferguson's testimony goes to the diminution of value of the property. As we went through . . . He an appraiser? He is a real estate broker. I think the answer to my question is not whether he's a real estate broker, but is he a real estate appraiser? No, he doesn't hold the license for appraisal. But he has been on Maui for over two decades. Did he cite any particular examples of homes that suffered this kind of damage to provide the basis for some opinion? Yes, Your Honor. He did cite, I believe, three on the record that he was able to find that have diminution of value. But he didn't relate it to the water damage. It was very vague, and he wasn't involved in those sales. He was just making estimates. It seemed quite vague what he was saying. It's based upon the Hawaii law that you have to disclose a material fact. And both . . . I didn't understand that either. I mean, if the water damage is all repaired because the proposal, and I guess the district court found that the removed and replaced, even though only a portion of it was damaged, once it's repaired, I don't understand why there would be any diminution of value for water damage. And in other states and other jurisdictions, you don't have to disclose if you repaired a particular issue. Right. Well, even if you disclose, why is there any diminution of value if it's completely repaired? You say, we have a brand new floor in here. That enhances the value, right? Yeah. I appreciate that, Your Honor. And that issue was raised, and Mr. Ferguson did discuss that. And because it's a material fact, it does have to be disclosed over time. And not only did Mr. Ferguson confirm that, but also a defendant's expert, Mr. Yaramimura, confirmed that water damage would, in fact, be a material fact that would have to be disclosed that would have diminution of value. Could I get back to the question of in contract damages, on the contract claim, the cases indicate that it has to be within the contemplation of the parties at the time the contract was entered into. And I think the district court was concerned that even though there might be some damage with respect to installing a refrigerator, it was skeptical that it was in the contemplation of the parties that the house would have to be shut down for a month. And there would be a cost for replacement housing and relocation expenses and acclimatization of the wood flooring. So, why was the district court wrong on that? The district court was wrong because it placed its emphasis on that it was a special circumstance. And the district court focused only on the actual damages, not actually on what the parties were contemplating at the time of the contract. And the court... But what's the evidence of the contemplation of the parties that the installation of the refrigerator could lead to these sorts of replacement housing and relocation expenses? Well, the district court held that the receipt was the contract, and that's Exhibit 32, and said that the confines of the contract are based on that. However, with respect to whether it's foreseeable, there's two-pronged test, whether it's foreseeable, and the parties don't have to have every single measure of damage at the time of the contract. The cases are clear that an offender doesn't have to have a tacit agreement for it to be foreseeable. The breaching parties' own education, training, and experience also factors into play here. And certainly, with respect to Lowe's being a sophisticated corporation, they know that when you're going to, if you damage a person's property, that you're going to have potential water damage, which can lead certainly to loss of use. So it's foreseeable in that respect. The court also really hinged its hat on the special circumstances exception, which we've obviously noted in our briefing doesn't apply here, because the special circumstances they felt weren't the actual products of the home, or how the home itself was actually the damage, is that it was loss of use. And so the district court unfairly placed that burden on the Ludlow's to disclose any of those potential things that would happen. At the time that they're purchasing the refrigerator, it's really unfair for that burden to be placed on the defendants to say, hey, by the way, if you damage my property, these damages are going to be foreseeable, and that you're going to have to replace those things. They're expecting Lowe's to maintain their agreement and to . . . The district court was very skeptical. I sort of share that. That seems very unlikely for installation of a refrigerator. Well, it's not just the refrigerator. They're also connected to a water line. When you're dealing with water . . . Most refrigerators are. Right, exactly. So when you're dealing with water, you always have the possibility that you will have damage, and that water obviously damages products. And the test is more of an objective test, Your Honor. And Lowe's' delivery manual, which is not a part of the contract, was particularly instructive on this. And it says in Exhibit 33, they put to their own employees that every precaution must be taken to protect against the customer's property. Special care must be taken on all services. And they must carry all the necessary tools to effectuate the delivery. So they knew the risks. Lowe's' own experience, they knew these risks. And so it wasn't a special circumstance. I do want to reserve some of my time. I only have two minutes. If there aren't any other questions, I'll wait for a rebuttal. Good morning, members of the Court. My name is Edmond Safaree. And I, along with my colleague, Linda Arakawa, who is seated at counsel table, represent Lowe's Home Centers, LLC, in this matter. Now, as the Court, I think, has caught on to, this is really a simple property damage case in which there was flooring damage sustained to a residence. During the delivery of a refrigerator. That's what it's about. Now, importantly, the plaintiffs have been awarded damages for the actual cost of repairing the actual damage to the property. So why are we here? We're here because the plaintiffs sought to turn a simple property damage claim into a windfall by seeking hundreds of thousands of dollars in loss of use damages to the tune of $3,000 a day and speculative damages of 10% of their property's value when or if they sold their house at some point in the future. Now, our position, as stated in the briefs, is that this Court should affirm the trial court's judgment because plaintiffs' exorbitant demands for loss of use and loss of value are not supported by Hawaii law and not supported by competent evidence. Fundamentally, while plaintiffs urge the Court to engage in an analysis of purely state law issues, related to what Hawaii law requires, as to the recovery of consequential damages, and when or if a claimant can sue into court for the very same conduct he claims constitutes a breach of contract, the fact remains that this Court does not need to reach those state law issues in order to conclude that the judgment in this matter should be affirmed. The reason for this is very simple. This case, as the Court has focused on and latched onto, is that it really turns on two evidentiary issues, which the Court below ruled on. The first was that the claim for loss of use damages, which is ultimately based on expert testimony from a construction professional, Matt Boone, that testimony was specifically excluded for the simple reason that the plaintiff chose not to disclose that testimony as they were required to under Rule 26 in a timely manner. Now, what is critically important to that point is that the plaintiffs have not appealed that ruling here, so that ruling is not before the Court. So what happens here, so the real issue here is whether or not Matt Boone, the flooring expert, and his testimony were properly excluded as expert testimony. Now, the plaintiff has taken the position that, well, the specific provisions of the declarations that were submitted by Mr. Boone at the trial, paragraphs 11 through 14, somehow, well, that's all lay testimony because he testified as to acclimation of the floor and how long, what kind of construction would need to be done, and which would then lead to the question of how long the loss of use would be. You know, I consider myself a relatively intelligent person, but it is not in my common experience, nor in the common experience of most people I know, unless they actually work in the industry, as to how long the floor needs to acclimate before it actually can be installed, or how long construction has to go on in order to remove a wooden floor of this nature and what needs to be done. So that assessment by the Court, striking the testimony, is judged to write abusive discretion standard, and there was no abusive discretion here. The second ruling, which is critical to the entire case, is the question of the exclusion of Mr. Ferguson. Now, what is the evidence as to Mr. Ferguson? What is interesting about this case, and I will cite the Court, we cited the decision of this Court in the Ollier versus Sweetwater Union High School District, and that case basically said that in a case such as this, where you have a case being tried to a judge and not a jury, where the judge is essentially their own gatekeeper, there should be wide latitude granted to that judge regarding the admission of evidence. So what happened here was that you have the declaration of Mr. Ferguson, and prior to that, there was also his report. What's interesting about the fact that when the judge is acting as his own gatekeeper is the fact that in order to actually perform that function, he had to read the report. He read the declaration, and as part of that analysis, looked at it and said, this is simply not reliable, and decided to discard it. Now, the question here is whether or not that ruling, according to the Ollier case, was illogical or implausible. I would submit, Your Honors, that there is no such showing of that here. Once you remove the testimony of both Mr. Ferguson and the stricken testimony of Mr. Boone, which was an expert, who was an expert, the case stands on nothing. There is no evidence to support the claims for loss of use. There is no evidence to support the claim for diminution in value, which on its face, I would also argue, is purely speculative. So opposing counsel points to testimony from an adjuster, Darian, and also the Ludlow's own testimony. And first of all, neither of those, neither of that testimony was expert testimony. Mr. Ludlow is not a home builder, so he could not testify to that, whatever he was testifying to. And my recollection is, his testimony was vague on that issue in any event. As to Mr. Durnian, Mr. Durnian, at trial, I cross-examined him, and he said he would defer to the experts on the matter as to whether or not there would be a loss of use. And my own expert testified that there was not provable in this case. So the portion of the record for Mr. Durnian's testimony is 11 excerpts of records submitted by the Plaintiff 167, paragraph 9. So ultimately, there really is no evidence, no competent evidence, upon which the plaintiff's damages claims can be proven. And so the ultimate legal issues that they would rather the court focus on, relating to the application of the Hadley v. Baxneel rule and how it has developed in Hawaii under the AmFAC case and following other cases such as Boe, do not have to be reached by this court. In the end, it comes down to two key evidentiary rulings, which are subject to an abusive discretion standard under the Ollier case, and plaintiff has not, by any stretch of the imagination, shown that those rulings were either an abusive discretion or illogical or just simply unsupportable. I am prepared to answer any of the questions the court may have. I guess I'll have one question, which is this, I mean, Hawaii law is tough with regard to the requirement to make disclosure. And leaving aside for a moment the quality of the evidence offered up by plaintiffs with regard to the reduction in market's value, the district court's order cited the failure of plaintiffs to have any intent to sell the property as a basis for precluding that. And I don't understand the logic behind that. I mean, I own a house here. I don't have any intent to sell. If something happens to it, the fact that I don't have an intent to sell doesn't mean that the future market value isn't diminished. So can you explain to me the basis for the district court's ruling to that effect? To the extent that there is no proof as to when the property will be sold, the notion that there could be a 10% diminution in value of the property, putting aside that the methodology for arriving at that conclusion was completely suspect and unreliable. The fact remains that the district court's decision on that point was in accordance with Hawaii law, which says that damages have to be proven with reasonable certainty. Now, in this case- Does that mean I can't get loss of value if I don't intend to sell? I mean, suppose I wish I had a great sports car and somebody runs into it. I don't want to sell it, but it does impact the value of it, separate and apart from the repairs. Does that mean if I don't plan to sell, I forfeit the loss or forfeit the right to claim for the loss? No, I would concede, Your Honor, if that is the proposition, that that alone would be questionable. The bottom line is, in this case, the evidence that was submitted, which was the 10% reduction, and there was no other evidence submitted on this issue as to what the loss of use, the diminution of value damages- But did it turn on the intent to sell? It did not, Your Honor. Oh, okay. It turned on the fact that the methodology that was being used by Mr. Ferguson was completely suspect. And I repeat again that what happened here was that the judge in this case, in deciding these issues, these issues were raised first on a motion in limine, and he decided at that point that he would give the plaintiffs a chance to prove up their case by presenting evidence that their expert was in fact qualified. And when they submitted their declarations on direct, which is the one opportunity to show that, to demonstrate that point, they failed to do so. And in making his ruling, Judge Tang also, in the transcript you'll read that he went back over the report and in concluding that the report itself was unreliable, decided on that basis to strike the testimony. Now, I will go back that the plaintiff's argument here has been, well, you know, there's a checklist. He satisfies one of the items, then he should have been allowed to testify. Now, the thing about it is, is that in the Ollier case, Ollier makes clear that it is well settled in the Ninth Circuit that their qualifications alone cannot establish the admissibility of expert testimony. Rather, we have interpreted Rule 702 to require that expert testimony be both relevant and reliable. The court specifically made a finding on the record that the methodology employed here by Mr. Ferguson was not, in fact, reliable. And that determination, based on a review, again, this is not a situation where we had a jury trial and the court acting as gatekeeper made sure the trier of fact never heard any of this. The judge in this case read the report. The judge in this case got to read the declaration and after having done so, decided that it, in fact, was not reliable. That, under Ollier, should be a court of great deference. There are any other questions? Apparently not. Thank you. Thank you, Your Honor. Thank you. Just a few points. First, with respect to the diminution of value, Mr. Ferguson was primarily disqualified because the court said he didn't have the qualifications. He felt he didn't have a degree or other things necessary to serve him to be qualified as an expert. That's the first point. And whether or not 10% is the measure of the diminution of value really goes to the weight on whether the evidence should come in. And that can be considered, based upon the court, can make that analysis whether 10% was reasonable. I also want to point out, Mr. Yamamura, the defendant's own expert, agreed that damages of water would, in fact, be a material effect that would have to be disclosed. And that if, in fact, that was a material effect, then there would be diminution of value. Mr. Yamamura didn't, of course, testify to that because the defendant didn't want him to testify to that, but he did confirm that there would be diminution of value. And taking Mr. Ferguson out of the equation . . . That doesn't solve the problem of what . . . Okay, I can understand the concept, but that's not evidence that's going to be sufficient to establish any amount as required by Hawaii law with reasonable certainty. Mr. Ferguson would have explained why 10% is the measure, and the court could have taken that into consideration. It didn't. It took his qualifications solely into consideration. And we do have the judge as the trier of fact here. If he decides that this person isn't qualified, whether it's a legal decision in terms of qualification as an expert or whether it's a determination he's not very persuasive, didn't the end result the same? No, he would have to hear the evidence. Admit him, and then the evidence now would be on the record that we did have loss of use. And instead he focused in on the qualifications. And I know my time is short, Your Honors. I'd like to just point out that under Hawaii law, the special circumstances is an objective, it's a reasonable test. And to place the burden on the Ludlow's to disclose everything under the breach of contract standard is undue. And instead of taking the totality of circumstances and placing that burden equally, upon the parties. Thank you. Okay, we thank both parties for their argument. In the case of Ludlow, the clause is submitted.
judges: O'scannlain, Clifton, Ikuta